## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE INTERBANK FUNDING CORP.
SECURITIES LITIGATION

Civil Action No.  02-1490 (JDB)

## MEMORANDUM OPINION

This securities fraud action is once again before the Court following a second remand

from the United States Court of Appeals for the District of Columbia Circuit.  The D.C. Circuit

vacated the Court's most recent order dismissing plaintiffs' complaint with prejudice, and

instructed the Court to reevaluate whether plaintiffs could amend their complaint to meet the

heightened pleading requirements applicable to securities fraud claims.  Plaintiffs have now

moved for leave to file an amended complaint.  After carefully reviewing the proposed amended

complaint, the Court concludes that plaintiffs have failed to cure all the deficiencies identified in

their previous pleadings.  The proposed amended complaint does not adequately plead

"transaction causation" (i.e., reliance), which is a required elements of a securities fraud action.

Accordingly, the Court will deny plaintiffs' motion to amend their complaint.

## BACKGROUND

The parties need little reminder of this litigation's tortuous history, which arises out of

alleged malfeasance in connection with securities offered by the Interbank Funding Corporation

("Interbank").[1]  In 2004, the Court dismissed with prejudice plaintiffs' uncertified class-action claims.  See In re Interbank Funding Corp. Secs. Litig., 329 F. Supp. 2d. 84.  The D.C. Circuit vacated, concluding that the Court's dismissal with prejudice was inadequately explained, and directing the Court "to enter a new order either dismissing without prejudice or explaining its dismissal with prejudice."  Belizan, 434 F.3d at 584.

On remand, the Court again dismissed plaintiffs' claims with prejudice, explaining that "[d]ismissal without prejudice would only have resulted in a futile effort by plaintiffs to re-litigate the same issues determined against them by this Court."  In re Interbank Funding Corp. Secs. Litig., 432 F. Supp. 2d 51, 57 (D.D.C. 2006).  The D.C. Circuit affirmed the dismissal of some of plaintiffs' causes of action, but remanded the claims brought pursuant to Section 10(b) of the Securities Exchange Act of 1934.  The Court of Appeals instructed this Court to reevaluate those allegations in light of a newly-decided Supreme Court case.  Belizan v. Hershon, 495 F.3d 686, 692 (D.C. Cir. 2007) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007)).[2]

Plaintiffs have again moved for leave to amend their complaint against Radin Glass & Co, LLP ("Radin"), Interbank's auditing firm and the sole remaining defendant.  For the reasons detailed below, the Court denies plaintiffs' motion.

---

[1] The details of the alleged fraud are contained in the previous opinions issued in this litigation.  See, e.g., Belizan v. Hershon, 434 F.3d 579, 580-81 (D.C. Cir. 2007); In re Interbank Funding Corp. Secs. Litig., 329 F. Supp. 2d 84, 86-88 (D.D.C. 2004).

[2] The Court of Appeals also instructed this Court to reexamine plaintiffs' allegations that the company that sold them the Interbank securities violated section 12(a)(2) of the Securities Act of 1933.  Belizan, 495 F.3d at 693-94.  Plaintiffs have since settled their claims against that company.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give" leave to amend a complaint "when justice so requires."  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).  A court may, however, "deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 945 (D.C. Cir. 2004); see also Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("It is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment.'" (quoting Foman, 371 U.S. at 182)).

In reviewing whether a proposed pleading can survive a motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant County Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993).  Therefore, plaintiffs' factual allegations must be presumed true, and they must be given every favorable inference that may be drawn from the allegations of fact. Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  But the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## ANALYSIS

Plaintiffs' only claim against Radin is that the firm, through its statements about Interbank's securities, violated Section 10(b) of the Securities Exchange Act of 1934.  That section prohibits the "use or employ, in connection with the purchase or sale of any security . . . , [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).

To properly plead a cause of action under Section 10(b), a plaintiff must allege that the defendant (1) made a material misstatement or omission of a material fact, (2) with scienter, (3) in connection with the purchase or sale of a security, (4) upon which the plaintiff reasonably relied, and that (5) plaintiff's reliance was the cause of his injury.  See Media Gen., Inc. v. Tomlin, 532 F.3d 854, 858 (D.C. Cir. 2008).  Plaintiffs in securities fraud cases must "state with particularity . . . the facts constituting the alleged violation."  Tellabs, 551 U.S. at 313.

Radin argues that plaintiffs' proposed amended complaint fails to state a claim for relief under Section 10(b), and that amendment would therefore be futile.  Specifically, Radin contends that the proposed amended complaint fails to plead facts that establish that Radin made material misstatements or omissions of fact, that plaintiffs relied on any such statements or omissions,[3] or that any such reliance caused plaintiffs' injury.[4]

---

[3] Most courts refer to this reliance element as "transaction causation," as will the Court. See Dura Pharm. Inc., v. Broudo, 544 U.S. 336, 341 (2005).

[4] Radin also suggests that the proposed complaint does not properly allege scienter.  It gives no support for this assertion, however, instead offering to "address the scienter pleadings should the Court deem that to be necessary."  Def.'s Opp'n to Pls.' Mot. to Amend [Docket
(continued...)

The Court agrees that plaintiffs' proposed amended complaint does not adequately plead transaction causation, the reliance element of a securities fraud claim.  Accordingly, the Court denies as futile plaintiffs' motion for leave to amend their complaint.  Although plaintiffs have properly pled the remaining elements of securities fraud, the Court need not reach those issues.

Transaction causation "refers to the causal link between the defendant's misconduct and the plaintiff's decision to buy or sell securities."  Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc., 343 F.3d 189, 196 (2d Cir. 2003); see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, ---, 128 S. Ct. 761, 769 (2008).  "The obvious reason for this requirement is that a plaintiff in a rule 10b-5 action should not be allowed to recover damages when the defendant's wrongful action had no relationship to the plaintiff's loss."  Sharp v. Coopers & Lybrand, 649 F.2d 175, 186 (3d Cir. 1981).  To establish this element of securities fraud, a plaintiff must allege "that but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction."  Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005) (internal quotation marks omitted).

Plaintiffs do not seriously argue that they directly relied on Radin's alleged misrepresentations or omissions.[5]  Instead, they urge the Court to presume transaction causation

<hr />

[4](...continued)
Number 123], at 4 n.6 ("Def.'s Opp'n").

[5] The proposed amended complaint does not, for example, allege that they read Radin's reports, or were otherwise aware of the firm's representations.  Their only contention on this point -- not even expressed in their complaint -- is that they "relied on Defendants to disclose all material facts related to [Interbank] securities, . . . Defendants failed to do so, and . . . this omission caused Class Members' transactions in [Interbank] securities."  Pl.'s Mot. to Amend Compl. [Docket Number 117], at 14-15 n.7 ("Pl.'s Mot.") (quotation marks and citations omitted).  Plaintiffs' contention that they trusted Radin does not satisfy the standard for direct
(continued...)

based on two alternative theories: <u>Affiliated Ute</u> and "fraud created the market."

    A. <u>Affiliated Ute</u>

    Plaintiffs first argue that they are eligible for a presumption of reliance under <u>Affiliated Ute Citizens v. United States</u>, 406 U.S. 128, 153-54 (1972).  Where a securities fraud case "involv[es] primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery."  <u>Affiliated Ute</u>, 406 U.S. at 153.  Rather, "reliance on the omitted information may be presumed where such information is material."  <u>Black v. Finantra Capital, Inc.</u>, 418 F.3d 203, 209 (2d Cir. 2005).  This so-called <u>Affiliated Ute</u> presumption reflects the idea that where the defendant's fraud consists largely of omissions, "[r]equiring a plaintiff to show a speculative state of facts, i.e., how he would have behaved if omitted material information had been disclosed, places an unrealistic evidentiary burden on the 10(b) plaintiff."  <u>Joseph v. Wiles</u>, 223 F.3d 1155, 1162 (10th Cir. 2000).

    <u>Affiliated Ute</u>'s presumption of reliance "is limited to cases that 'can be characterized as . . . primarily alleg[ing] omissions.'"  <u>Desai v. Deutsche Bank Sec. Ltd.</u>, 573 F.3d 931, 940 (9th Cir. 2009) (quoting <u>Binder v. Gillespie</u>, 184 F.3d 1059, 1064 (9th Cir. 1999)); <u>see also</u> <u>Joseph</u>, 223 F.3d at 1162 ("<u>Affiliated Ute</u>'s holding is limited to omissions as opposed to affirmative misrepresentations.").  It "does not require the burden of persuasion to shift in cases where the plaintiffs allege either that the defendant has made false statements or has distorted the truth by making true but misleading incomplete statements."  <u>Abell v. Potomac Ins. Co.</u>, 858 F.2d 1104, 1119 (5th Cir. 1988), <u>vacated on other grounds sub nom. Fryar v. Abell</u>, 492 U.S. 914 (1989).

---

[5](...continued)
reliance -- that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction."  <u>Lentell</u>, 396 F.3d at 172.

Plaintiffs concede that their proposed complaint alleges both misrepresentations and omissions. Pls.' Mot. at 16 ("[This] case alleges some misrepresentations and omissions."). In such "mixed" cases, most courts "analytically characterize a 10b-5 action as either primarily a nondisclosure case (which would make the [Affiliated Ute] presumption applicable), or a positive misrepresentation case." Finkel v. Docutel/Olivetti Corp., 817 F.2d 356, 359 (5th Cir. 1987).[6] "Otherwise, to maintain in these cases an omission-misrepresentation dichotomy 'would require the trial judge to instruct the jury to presume reliance with regard to omitted facts, and not to presume reliance with regard to the misrepresented facts.'" Johnston, 265 F.3d at 192 (quoting Sharp, 649 F.2d at 188).

Here, plaintiffs argue that their case primarily concerns omissions because Radin's public statements all contained "a single constant omission: the class members were not informed they were investing in a Ponzi scheme." Prop. Amend. Compl. ¶ 76. Plaintiffs have also identified specific information that Radin allegedly failed to disclose to Interbank investors. See, e.g., Prop. Amend. Compl. ¶¶ 78-85 (improper related-party transactions); id. at ¶¶ 86-90 (losses from non-performing loans); id. at ¶¶ 110-17 (liens on several Interbank funds). Defendants respond that Radin's alleged fraud ultimately turns on the accuracy of its numerous public statements, and that plaintiffs therefore primarily allege misrepresentations. Def.'s Opp'n at 32-33.

Determining whose characterization of this action is more accurate is difficult in a case

---

[6] Accord Johnston v. HBO Film Mgmt., 265 F.3d 178, 192 (3d Cir. 2001); Joseph, 223 F.3d at 1162; Binder, 184 F.3d at 1064; Cavalier Carpets, Inc. v. Caylor, 746 F.2d 749, 756 (11th Cir. 1984); Austin v. Loftsgaarden, 675 F.2d 168, 178 n.21 (8th Cir. 1982). But see Cox v. Collins, 7 F.3d 394, 395-96 (4th Cir. 1993) (the presumption is "not warranted in a Rule 10b-5 case when the plaintiff alleges both nondisclosure and positive misrepresentation instead of only nondisclosure as in Affiliated Ute"); Berg v. First Amer. Bank Shares, No. 83-3887, 1985 WL 2232, at *5 (D.D.C. 1985) (same).

like this.  Distinctions between omissions and misrepresentations are nebulous, and it is often not clear where one ends and the other begins: "[E]very misstatement both advances false information and omits truthful information.  Statements which are technically true may be so incomplete as to be misleading . . . , [and a]ny fraudulent scheme requires some degree of concealment, both of the truth and of the scheme itself."  Joseph, 223 F.3d at 1162-63.  Thus, "[i]n an attempt to take advantage of the Affiliated Ute presumption, an artfully-pleaded complaint can recharacterize as an omission conduct which more closely resembles a misrepresentation."  Id. at 1162; see Desai, 573 F.3d at 941 (if "nondisclosure of a defendant's fraud was an actionable omission, then every manipulative conduct case would become an omissions case").

Given the difficulty of drawing semantic distinctions between omissions and misrepresentations, parsing plaintiffs' complaint to decide whether it more accurately alleges that "Radin misrepresented the Interbank funds' balance sheets" or that "Radin omitted information about the Interbank funds' balance sheets" is not particularly helpful.  See Joseph, 223 F.3d at 1162 ("The labels by themselves, therefore, are of little help." (quoting Wilson v. Comtech Telecom. Corp., 648 F.2d 88, 93 (2d Cir. 1981)).[7]  Instead, in determining whether to presume

---

[7] It is worth noting, though, that plaintiffs' allegations that Radin failed to disclose Interbank's Ponzi scheme bear more than a passing resemblance to those deemed "misrepresentations" in Joseph.  There, the Tenth Circuit highlighted as "typical" of the plaintiff's complaint the allegation that:

[Defendant] consistently omitted to disclose that its financial statements had been falsified and that its sales, revenues, assets and shareholders' equity had been artificially inflated.  Defendant concealed the existence of the unlawful scheme and the acts of manipulation committed pursuant thereto.  In furtherance of this campaign of concealment, [defendant] continually reported in its public statements that it had

(continued...)

reliance, "[w]hat is important is to understand the rationale for a presumption of causation in fact in cases like <u>Affiliated Ute</u>, in which no positive statements exist: <u>reliance as a practical matter is impossible to prove</u>." <u>Wilson</u>, 648 F.2d at 93 (emphasis added).

Reliance is not "impossible to prove" in this case because Radin <u>did</u> offer positive statements: Radin repeatedly declared that Interbank's financial disclosures were materially fair and in conformance with generally accepted accounting principles. Indeed, plaintiffs' proposed amended complaint lists at least eighteen separate affirmative statements by Radin certifying the Interbank funds' balance sheets. <u>See</u> Proposed Amend. Compl. ¶¶ 52-71; <u>see also</u> Pls.' Mot. at 7.[8]

Hence, plaintiffs easily could have alleged that they directly relied on Radin's assertions in deciding whether to buy, sell, or hold their Interbank securities. They chose not to. The rationale of <u>Affiliated Ute</u> -- "aid[ing] plaintiffs when reliance on a negative would be practically

---

[7](...continued)
achieved, and would continue to achieve, substantial growth in revenue and profits. <u>These statements . . . were materially false and misleading in that they failed to disclose the existence of the fraudulent scheme</u> . . . .

<u>Joseph</u>, 223 F.3d at 1163 (ellipses and emphases in original). The court concluded that "[s]tatements such as these, while struggling valiantly to bring the alleged conduct within the definition of 'omission,' indicate that what [plaintiff] really protests are the affirmative misrepresentations allegedly made by defendants." <u>Id.</u> The same can be said here.

[8] Typical of Radin's statements is the following, allegedly made in an SEC filing:

We have audited the accompanying balance sheet of [this Interbank fund] . . . . We conducted our audit in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement . . . . In our opinion, the balance sheet referred to above presents fairly, in all material respects, the financial position of [this Interbank fund], in conformity with generally accepted accounting principles.

Prop. Amend. Compl. ¶ 59 (second ellipses in original).

impossible to prove," Joseph, 223 F.3d at 1162 -- is thus absent.  Indeed, it would be contrary to

Affiliated Ute and basic tort principles to award a presumption of reliance in a case where

plaintiffs could, but do not, allege actual reliance.  See id. at 1163 (presuming reliance "would

fail to serve the Affiliated Ute presumption's purpose since this is not a case where reliance

would be difficult to prove because it was based on a negative").

  Moreover, the Affiliated Ute presumption does not apply "[w]here positive statements

form a central part of the alleged fraud such that the evidentiary problems inherent in proving

reliance on a non-disclosure are not present."  In re Salomon Analyst Metromedia Litig., 236

F.R.D. 208, 218-20 (S.D.N.Y. 2006) (Lynch, J.), vacated on other grounds sub nom. 544 F.3d

474 (2d Cir. 2008).  That is the case here.  Plaintiffs' proposed amended complaint makes clear

that Radin's positive statements are central to their allegations of fraud: "Radin repeatedly made

the false and misleading assertion to the public that [Interbank's] financial documents fairly

presented [Interbank's] financial state and were prepared in accordance with generally acceptable

accounting principles, thereby concealing the [Interbank] Ponzi scheme."  Prop. Amend. Compl.

¶ 85; see also id. ¶ 109 (same).  In other words, Radin's omissions merely "exacerbate[] the

misleading nature of the affirmative statements."  Starr v. Georgeson Shareholder, Inc., 412 F.3d

103, 109 n.5 (2d Cir. 2005)).[9]  Hence, the positive statements dwarf any omissions, "the

evidentiary problem of proving reliance on a mere non-disclosure is simply not present, and the

---

  [9] Plaintiffs repeatedly rely on a quote from Getty v. Harmon, No. 09-178, 1998 WL
919368, at *2 (W.D. Wash. 1998): "'superimposed over these uniform written and oral
misrepresentations is a single constant omission': the putative class members were not informed
they were investing in a Ponzi scheme."  See, e.g., Pls.' Mot. at 8, 16; Prop. Amend. Compl. ¶ 76.
This quote offers limited persuasive value, as it is supported by no analysis whatsoever and is
contrary to the prevailing understanding of the Affiliated Ute presumption.

<u>Affiliated Ute</u> exception does not apply." <u>In re Salomon Analyst Metromedia Litig.</u>, 236 F.R.D. at 220 (citing <u>Wilson</u>, 648 F.2d at 93).

The <u>Affiliated Ute</u> presumption is an exception to the traditional reliance requirement, and exists to ensure that plaintiffs do not face the impossible task of demonstrating reliance on a non-disclosure.  Plaintiffs here are not in that position, and hence they are not entitled to the <u>Affiliated Ute</u> presumption of reliance.

B. <u>Fraud Created the Market</u>:

Plaintiffs also argue that they are entitled to a presumption of reliance through the "fraud-created-the-market" theory.  Related to the better known "fraud on the market" doctrine, this presumption of reliance applies when "the fraudster directly interfered with the market by introducing something that is not like the others: an objectively unmarketable security that has no business being there." <u>Regents of the Univ. of Cal. v. Credit Suisse First Boston</u>, 482 F.3d 372, 391 (5th Cir. 2007).  In such cases, "actors who introduced an otherwise unmarketable security into the market by means of fraud are deemed guilty of manipulation, and a plaintiff can plead that he relied on the integrity of the market rather than on individual fraudulent disclosures." <u>Id.</u> Reliance is presumed "because but for the fraud, the security could not have been proposed, issued, or sold." <u>Ockerman v. May Zima & Co.</u>, 27 F.3d 1151, 1160 (6th Cir. 1994).

Courts adopting this theory[10] have articulated two circumstances in which a security is

---

[10] The Fifth, Tenth, and Eleventh circuits have allowed the presumption.  <u>See Ross v. Bank South, N.A.</u>, 885 F.2d 723, 730 & n.11 (11th Cir. 1989) (en banc); <u>T.J. Raney & Sons, Inc. v. Ft. Cobb</u>, 717 F.2d 1330, 1333 (10th Cir. 1983); <u>Shores v. Sklar</u>, 647 F.2d 462, 469 (5th Cir. 1981) (en banc).  The Seventh Circuit has rejected it.  <u>See Eckstein v. Balcor Film Investors</u>, 8 F.3d 1121, 1130-31 (7th Cir. 1993).  The only court in this circuit to discuss the doctrine did not address its viability.  <u>See In re Newbridge Network Sec. Litig.</u>, 767 F. Supp. 275, 283-84 (D.D.C. 1991).

"unmarketable."  A security is "economically" unmarketable "if no investor would buy it because, assuming full disclosure, the security is patently worthless."  Id. at 1160; see also Joseph, 223 F.3d at 1164.  By contrast, a security is "legally" unmarketable when, "absent fraud, a regulatory agency or the issuing municipality would have been required by law to prevent or forbid the issuance of the security."  Ockerman, 27 F.3d at 1160; see also Joseph, 223 F.3d at 1164 (securities are legally unmarketable when they are "issued without lawful authority").

Plaintiffs' argument is simple.  They insist that Interbank's securities were legally unmarketable because Interbank was "an unregistered investment company under the Investment Company Act [ICA] of 1940."  Under 15 U.S.C. § 80a-7, "it is illegal for an unregistered investment company to offer securities."  Therefore, plaintiffs contend, Interbank's securities were "issued without lawful authority," and the fraud-created-the-market presumption of reliance should apply.  Pls'. Mot. at 18.

Even assuming the viability of the fraud-created-the-market theory, this argument fails because plaintiffs have not connected Radin's alleged fraud to the securities' unmarketability. Plaintiffs contend that the Interbank funds were "issued without lawful authority" because of the ICA's restrictions on unregistered investment companies.  But Radin had nothing to do with whether Interbank was unlawfully issuing securities as an unregistered investment company. Plaintiffs have not alleged that Radin vouched for Interbank as a registered investment company. Nor do they suggest that Radin fraudulently failed to state that Interbank was not a registered investment company.  Rather, Radin's alleged fraud stems from its declarations that the Interbank funds' financial statements were materially fair and in accordance with generally accepted accounting principles.  These declarations may have been fraudulent, but that fraud is irrelevant

to whether "the securities were not qualified legally to be issued." T.J. Raney, 717 F.2d at 1333; see also id. (in ascertaining legal unmarketability there is no inquiry into "the worth of the security or the veracity of the representations made in the offering circular").  In other words, Radin's alleged fraud was not a but-for cause of any legal unmarketability, and hence cannot support a fraud-created-the-market presumption of reliance.

Plaintiffs respond that "[t]he specific provisions of the ICA that Interbank was alleged to have violated were its prohibitions on related-party transactions.  These transactions were, of course, an integral part of the Ponzi scheme Plaintiffs allege Radin failed to disclose."  Pl.'s Reply at 12 (citation omitted).  This misses the point.  Plaintiffs have argued that Interbank's securities were legally unmarketable not because they violated the ICA's restrictions on related-party transactions, but because Interbank was an unregistered investment company and thus not entitled to issue securities in the first place.  See Pl.'s Mot. at 17-19.  Indeed, fraud stemming from improper related-party transactions would not go to the fraud-created-the-market theory at all.  See Joseph, 223 F.3d at 1165 ("There is a significant difference between securities which should not be marketed because they involve fraud, and securities which cannot be marketed because the issuers lack legal authority to offer them.").  Radin's actions relate only to whether the Interbank securities "involve[d] fraud," not whether Interbank "lack[ed] legal authority to offer them."  See id.  Accordingly, plaintiffs cannot rely on the fraud-created-the-market theory to supply a presumption of reliance in satisfaction of the transaction causation element of their securities fraud claim.

## CONCLUSION

Plaintiffs have had ample opportunity to allege facts that, if proven, would establish

Radin's liability for securities fraud.  Plaintiffs' latest attempt to do so through another proposed

amended complaint cures many of the deficiencies in their prior pleadings, but they still have not

pled facts that demonstrate transaction causation.  In light of plaintiffs' continued inability to

plead a cause of action for securities fraud, the Court denies plaintiffs' motion for leave to amend

their complaint.  The Court is convinced that plaintiffs cannot allege facts sufficient to sustain an

action for securities fraud, and so also dismisses plaintiffs' claim against Radin with prejudice.

A separate order accompanies this memorandum opinion.


_____
/s/
JOHN D. BATES
UNITED STATES DISTRICT JUDGE


Date: <u>November 6, 2009</u>